Ladies and gentlemen, we have the case of in re the marriage of Gary Carr and Kathy Carr and we have Mr. William Hudson for the appellant and Mr. David Eppersbacher for the appellate. So you may proceed when you're prepared. Okay, that's fine. Very nice to meet both of you. You may proceed. May it please the court and counsel, again I'm William Hudson of the Woodcock and Hudson Law Offices for the respondent appellant Kathy M. Carr and with me is my partner George W. Woodcock Jr. Gary and Kathy Carr were divorced after a trial in 2007. The trial court, Judge Weber, entered an order dividing the parties' property and awarded Kathy $6,550 per month for maintenance but stated in the order, This paragraph shall be reviewed by the court upon Gary obtaining the age of 65 years. The court likewise ordered Gary to maintain a life insurance policy on himself, payable to Kathy in the amount of $500,000. Again stating, this paragraph shall be reviewed by the court upon Gary's attaining the age of 65 years. Gary filed a petition to terminate maintenance in 2011 shortly before turning 65. The contested hearing was held and Judge Weber entered an order modifying and terminating the maintenance such that Gary's obligation would reduce and eventually terminate when he turned 70. Kathy appealed Judge Weber's order and we stand before you today. Facially, this may appear to be yet another instance where a former spouse is unhappy with the trial court's determination as to maintenance and she gets her 15 minutes to explain the trial court's error. Clearly, the issues presented through the briefs are whether the trial court erred when it, one, modified and, two, eventually terminated maintenance for Kathy. And this could simply be put to rest by the court looking at the facts and evidence of the case and Judge Weber's decision. The facts are very simple. Gary is age 65 while Kathy is age 61. They were married for 32 years. Gary is a doctor with significant education. Kathy has no college degree and she is currently employed as a secretary. Dr. Carr's income was $250,000 approximately at the time of the divorce and his W-2 or his 1040 has shown income in 2011 or 2010 of $339,000. Kathy's income is about $27,000 as a secretary. Dr. Carr testified that he spent 80 to 100 hours per week working at the time of the dissolution and has since spent more time than that, approximately 100 hours per week in 2011. Gary testified to some stress issues he had. He saw a doctor two times in two years regarding those issues and Kathy has asthma and allergies. Gary purchased land and built a $650,000 home after the dissolution was entered. Meanwhile, Kathy retained the marital residence which had a value at the dissolution of $250,000 and at the time of the modification hearing was about $217,000. She testified to some repairs that were needed to be done to the home and for its upkeep. Gary has a new spouse and vacationed in Massachusetts, Wyoming, England and Greece while Kathy did not and has not since remarried. The first larger issue is raised between the briefs and that first issue is the play of a modification under Section 510 versus a general review and whether that should even be a situation that arises. The second issue is the interplay of retirement and the age of the parties with respect to maintenance. The first larger issue was raised whether or not this hearing and the modification hearing should have been conducted under Section 510 with requiring a substantial change in the circumstances or a general review which is argued by Gary. One of the cases that Gary has cited is the Golden case. That case is 358 Illinois Appellate 3rd 464. In the Golden case, there is a strong dissent written by Justice Bowman and I think that it's important that we examine that case. Justice Bowman states at page 473, page 474, the majority proceeds to carve out its own version of a quote unquote review hearing in which maintenance can be modified or even terminated absent a showing of substantial change in the circumstances. Such a result flies in the face of the legislature's mandate that an order for maintenance may be modified or terminated only upon a showing of a substantial change in the circumstances under Section 510. Justice Bowman continues, in my opinion, the appropriate course of action in the case would be to treat the respondent's petition, the obligor's petition, as what it really is, a petition to terminate maintenance in which a substantial change in circumstances must be proven. Justice Bowman further reflected upon the Cannon case, upon which the Golden case relied. That Cannon case had a divided opinion and Justice Bowman pointed out that the justice agreed with the dissent in that case as well. While the thrust of the theory of the Cannon majority appears to be that the language of the order implies an intention on the part of the court that it retain power to change the maintenance award without the necessity of a showing of a substantial change in circumstances, the dissent in that Cannon case gave the order a different interpretation. And that interpretation is this. The court's intent was to set the matter for a review so that it might change the maintenance benefits to the wife if a substantial change in the circumstances was shown. So when the trial court sets it for a review, the allegation doesn't, you don't have to show a substantial change for the court to review it. But to modify it, the position you're taking is that there does have to be a substantial change in circumstances. Yes, Your Honor. And I believe supported by the, I acknowledge there are dissent opinions, but the dissent opinion in the Golden case and the Cannon case both said that it's a review such that you're reviewing to see if there is a substantial change in the circumstances. That's where in this case, in Barr, there was no substantial change in the circumstances. And the trial court here didn't make specific findings that there was a substantial change in circumstances. It just set a pattern of reductions over a number of years. That's correct, Your Honor. And also I acknowledge that the case law has said that there does not have to be specific findings of fact with respect to each factor. But the evidence is what the court must rely on to determine how those factors play out. And how many years after the divorce was this review set? It was four years. It was four. Yes. And the marriage was how long? Thirty-two years. I thought there was some evidence involved about high blood pressure and having to reduce hourly work. There was. And that's not a substantial change? Or what did the trial court say? Your Honor, I don't believe the trial court specifically said that that was a substantial change. It didn't say it wasn't. It didn't say anything. It didn't say anything. That's correct, Your Honor. But there was testimony that Dr. Carr had constructed a $650,000 home. He had to liquidate his assets to pay for the construction of that home. There's a $450,000 mortgage on it. He acknowledged that part of his working and part of his stress was due to this $450,000 mortgage looming overhead. Now, at the time of this dissolution, did not the wife get a tremendous amount of assets besides the home, like $399,000 or something like that in liquid assets? She was awarded assets as well as Dr. Carr. And those assets, were they in forms of stock or cash or diamonds or what were they? I don't know what they were. I believe they were investments. Oh, investments. I believe they were investments. So in stocks, basically? I believe so, Your Honor. I could be mistaken. I believe they were an investment. Do you think that's relevant? The court even consider what was assets she got at the divorce? I do believe that it is relevant and a portion because the courts have said that in deciding on a maintenance question, one party is not required to deplete her assets in order to support herself. And I believe that some more cases cited by Gary, actually, in addition to the cases that we have cited, support that position. And I think that a lot of the focus has gotten pushed onto Gary Carr working and how much he must work. But I think on the other hand, the other issue is at what point can Kathy be secure in knowing that she can retire? She's working a $27,000 a year job. At what point is she supposed to be able to be secure? And that's one of the other issues that I would like to address. Kathy's retirement. The court, in essence, made the rehabilitative maintenance for Kathy, which in the 2007 order. And I believe still continued that in the 2011 order. I believe that that was inappropriate according to the case law that we have. First of all, the Shrimp case that we have cited says that the court in that case denied the husband's petition at age 68 to modify maintenance because relevant factors included his age, health, and motives, as well as the former spouse's ability to provide for herself. Some of the other cases that we have cited is that in the Heroid case and also the Nord case, which are cited, permanent maintenance is appropriate where a spouse is only employable at a lower income as compared to the spouse's previous standard of living. The parties had quite a good standard of living previously. Kathy is absolutely unable to keep up with that standard of living, as the case law says that she should be able to. Further, the Smith case cited by Gary says that in that particular Smith case, and I believe it's relevant to this case, in light of the wife's age, her lack of job skills, and late entry into the job market, the court decided there should be permanent maintenance in that Smith case. I believe those circumstances are extremely similar to this case. What is her age now? Kathy's age is 61. And how long is the new marriage of the husbands? I believe it was shortly after the dissolution was entered in 2007. Well, what's interesting to me, you mentioned that the wife has a home worth $250,000 and the husband has got one worth $650,000, but what are the equities in each one? I believe the doctor testified that he had a mortgage of $450,000. But I thought they said something about did they revalue the house after the show? He testified on his own that he thought that he would not be able to get any more than $450,000 or $500,000 for that. So he's got no equity, basically. Yes. And then what about the $250,000 house? Is there any equity in that? I believe there is equity in that house. But what are we talking? I'm not mistaken. I don't believe that there was a mortgage on it. There's no mortgage on it? I don't believe that there was. Okay. That's all you need. Gary's age and retirement have come up. But if you look at Judge Weber's order, what he did was he referenced Gary's retirement age. He referenced Gary's retirement. Gary is not retired. He's still working. He's still paying on that mortgage. The evidence came up that he is working because he has that mortgage to pay off. And what Judge Weber did was he did not fix the termination of maintenance to Gary's retirement. He picked an arbitrary age of 70. And one of the things that he said was in his order, Judge Weber said, I felt like at the time it was difficult for me to make a determination as to whether I should order that the amount starts decreasing or just terminate it because I felt like that would be speculative given the fact that Dr. Carr was going to work longer. That's Judge Weber in 2011 talking about how he made his decision in 2007. None of the facts have really changed in 2011. Gary is still working. It would still be speculative as to when he would retire. The order should not have been tied to a specific age, which was an arbitrary age. Judge also posed a question about permanent maintenance. He says, when I read about cases about permanent maintenance, I'm wondering if that means having an 80-year-old man in a nursing home paying maintenance. I know some 82-year-old men that are still working and they're still earning an income. So I believe that because of those reasons that Judge Weber's order modifying the maintenance should be reversed and that the maintenance should be permanent maintenance and it should last until such time as Gary Carr is able to prove a substantial change in the circumstances necessitating a modification and or termination of the maintenance obligation. Thank you. Thank you, Mr. Hudson. You'll have the opportunity for rebuttal. Yes, ma'am. Thank you, Mr. Edmonds-Bobbitt. May it please the Court. Counsel. And I wish my opposing counsel would anyone except 82-year-old George Woodcock in this particular case. Well, I have to say that I was thinking about my dad working at 88. So, you know, everybody retires at different ages. Mr. Woodcock may not be verbally communicating with you, but certainly he is here. But regardless, isn't it speculative when he's going to retire? What if he's still working and trying to pay off that $450,000 mortgage 10 years from now and making $350,000, $400,000, and then we have the wife getting zero? I don't think it's speculative to say when he is going to retire based upon the testimony that was before Judge Weber. In 2007, there was, as the judge states in his order, there was testimony about what Dr. Carr's expectations were. In the hearing in September of 2011, there was again testimony from Dr. Carr about what his plans or intent was insofar as retirement. But still, isn't that speculative until it comes to pass? I mean, a lot of things change it. I hate to use the term. I hate to agree with you and say it is speculation because there was testimony as to what the plans of the parties were. But it's certainly not a reality. It is not a reality. And I would say this. It is the same reality that the Fourth District Appellate Court was faced with in the Clayton case, which is cited in our brief. I'm sorry, the Clayton case, which is cited in our brief. In that case, there was a 28-year marriage. The husband was an oral surgeon, had become a partner in a practice in Bloomington, Illinois. And the trial court, this was not on our review, this was a trial court setting maintenance, established a maintenance order at six years. And the trial court said, part of the reason I'm going to do that is because in six to eight years, the husband will probably be retired and will have substantially less income. The wife appealed that. The court said it was not an abuse of discretion for the trial court to tie the maintenance award to the anticipated retirement date. In other words, that differs from the Pohl's case, which is also cited in our brief. And in the Pohl's case, the First District Appellate Court actually entered an order that literally said the maintenance will terminate upon retirement. And those two appellate courts have said it is not fair for a trial court to tie that maintenance order to the retirement. And that Claydon case says it doesn't have to be specifically said on the date to retire. The trial court anticipated, based on the evidence before it, when that was going to be. If he doesn't retire on the date that this... December 1st of 2015. Thank you. If he's not retired then, would it be appropriate for her to file a petition to come back in and say there's a substantial change of circumstances? That there was anticipated in the court's order a retirement and he's not retired? No. And why not? Because this trial court in 2007 said, I reject the argument that George Woodcock made in 2007. That argument was this maintenance should be permanent maintenance. The trial court specifically in the judgment of dissolution that is before you said, I reject an award of permanent maintenance. I order maintenance of $6,550, reviewable when Dr. Carr turns 65. There was no appeal of the 2007 judgment. There was no appeal of the trial court's decision to order temporary maintenance, not permanent maintenance. 2011, the trial judge had the option of either increasing, decreasing, continuing, or terminating. And the trial judge has entered an order terminating maintenance on December 1st of 2015. There is no opportunity for Kathy Carr to file a petition to change the termination date. And that's the question you asked me. As opposed to a petition to modify between now and December 1st of 2015 to address the amount of maintenance between now and that date. Have I responded to the court's inquiry? Yes, you have. Thank you. So our position is, and quite frankly, the court would almost have to ask itself, why are we here if the question you asked would be answered in the affirmative? In other words, if it's not a final and appealable order of the maintenance being terminated on December 1st of 2015, what standing is there to present that issue to the court at this point? Now, I suppose the court could say, well, it becomes a question of who now carries the burden of doing what. And that could be what brings this before you. But our position is it's a termination of maintenance. The arguments about substantial change, I understand the arguments that Mr. Hudson made, but it completely ignores the Illinois Supreme Court in the Custer case. Now, the Custer case differed just slightly in that the parties had a marital settlement agreement, and in that agreement they said this maintenance that we've agreed upon is going to be reviewable at a certain date in the future. And it was reviewed, and the wife took the position that while it could be reviewed, it couldn't be modified. And ultimately the appellate court rejected that. It went to the Illinois Supreme Court in 2009, and the Illinois Supreme Court on page 623 of the official report in that case specifically says, and quotes the marriage of Gould and Case in doing so, the trial court had the discretion to continue the maintenance without modification, to modify or terminate maintenance, or to change the maintenance payment terms. There is no burden of proving a substantial change of circumstances on Dr. Carr in this case based upon what I believe the law in Illinois is as pronounced in this Custer case where clearly Judge Weber's order contained a review provision. And Dr. Carr's obligation was simply to come into court and to have the court consider those statutory factors in both 504 and then 510, because 510, of course, is the statute that includes that language that says these additional factors shall be considered in a proceeding where there is to be a modification and in a review proceeding. And the Illinois Supreme Court has analyzed that. The Gould and Case clearly analyzes that and says the legislature intended by the inclusion of that language to mean that there could be a review and it was not subject to the proof of the burden of substantial change of circumstances. So I understand those arguments, but I think they completely misrepresent the state of the law as set forth in the Custer case analyzing the Gould and Case. See, I read Custer to say that you don't have to prove a substantial change in circumstances when the trial court set a review. But at the review, in order to modify it, there has to be a substantial change in circumstances. I would agree with that if what you've just asked me is between now and December 1st of 2015, can Kathy Carr go into court and ask for a change in the amount of maintenance between now and the termination date? I think she would have to prove a substantial change in circumstances. Because now we're outside the—we're no longer under the court's review of temporary maintenance order. We now are outside of that. The court has now said, here's what it's going to be, here's the termination date, and the court is basically, by saying it will terminate, he has now created a maintenance order that will require a showing of substantial change in circumstances, or it shouldn't change, it should just go right like he ordered it. But up to this point, up until he makes his pronouncements in September of 2011, I think he simply is obligated to continue to consider the factors under 504 and 510, does not have to specifically go through each of them in his record, and as long as the record supports it. But even if there is a substantial change in circumstances here, you know, Dr. Thompson says, since 2007, we now have a herniated or bulging disc, we now have hypertension, Dr. Carr's on two different medications, he's had a hernia surgery, he continues to work and he is putting himself at stress partly because of his own judgment to acquire this new home. But I think there's a change of circumstances in this record. And let me say one final thing about the assets. The wife, if you look at the original judgment of disresolution of marriage itemizes the assets, they each came away with about $750,000, and Judge, you're correct, about $400,000 of that was just in one retirement account. If you look at her financial affidavit, she's still got them. In fact, the amounts of some of them have increased. She's got well over $400,000 in retirement accounts. And the judge made a specific finding that he recognized that she's now in an age where she will be able to start drawing without penalty from those retirement accounts. And that language is very similar to these other cases cited where the courts have looked at the assets of the parties seeking the maintenance award. These other cases, do they have a situation where the payor, here the husband, is making $88,000 more than he was making at the time of the divorce? She's making $28,000 more because she had zero and now she went to $28,000. That's correct. And he went from $250,000 to $339,000. Not quite. The $250,000, if you go back and consider that, they were diverting about $35,000 or $40,000 into a retirement account. That's where some of that asset came from. And that had the effect of reducing that reportable income. By 11, he's not doing that because he's paying the maintenance, so he doesn't get the benefit of having monies into a retirement account. So while the numbers at first blush appear to be as large as you just stated, they're not. The net effect of that is certainly not. There were two factors for the increased income. One, money's not being diverted into the retirement plan. And second of all, he's working more hours in order to accommodate the mortgage he's taken on and the maintenance order that he's been obligated to pay. But isn't the fact that he's not being able to put it into his retirement tied more to this house that he bought? Well, it certainly is tied. I'm not going to deny that it's not tied to the debts they took on. Here's the root of the real problem. Judge Weber mentioned it in his order. For 32 years, they're married and they have substantial income. And when it comes time to get divorced, the writing is on the wall. When the earned income stops, when they get to be retirement age, neither one of these persons are going to have the wherewithal to continue the lifestyle that they apparently had while they were married. But it hasn't happened yet. He's continuing his lifestyle, and she's going to be going from like $95,000 down to $27,000 or $28,000. As far as we know, he's still at his pretty high-level lifestyle. And he's still working 100 hours a week and his health is deteriorating? He could stop any time working 100 hours a week, which then you would have obviously a substantial change in circumstances. Well, I think the way the trial court framed the order was to create an environment where he could do that. In other words, I think that was the methodology that the trial court employed was to say, this man continues to work against the recommendations of his physician. And quite frankly, the trial judge could judge the credibility of these people as far as what their lifestyle, their expenditures, what their motives were. And he continues to work in a way, because he has the house debt, because he has the maintenance obligation, because he basically feels financially compelled to do so. So I'm not going to deny that he continues to do it. But as his doctor said, it can't go on forever. He can't keep doing that. I don't think this court can say that a reasonable person, that no reasonable person, could view this the same way this trial judge did. He tried to frame an order that is going to get Mrs. Carr well into the years when she can start taking assets as retirement. She has employment. And I would note, the maintenance order was based upon Mrs. Carr as a homemaker. And if you look on page 5 of Mrs. Carr's brief in this case, she admits, before the end of August of 2007, the same month the judgment is entered, she's employed full-time as a secretary and since, earning $28,000 a year, health insurance, and a participant in a retirement plan. The trial judge had to judge the credibility of the clients. Thank you very much. Thank you, Mr. Spock. And Mr. Hudson, do you have rebuttal? Yes, Your Honor. Briefly, Your Honor, first of all, as Mr. Eberspacher spoke about the credibility of the witnesses, Dr. Thompson, the expert witness, was also the employer of Dr. Carr's new wife, who was also named Kay. And so that was the doctor that Dr. Carr went to, was the employer of his new wife. Further, Dr. Carr continued to go on vacations to Massachusetts, Wyoming, England, and Greece, and continued living his lifestyle. Kathy had no education to fall back on. Sure, Dr. Carr could continue to not have to save money because he could fall back on that medical degree. That, in and of itself, was an asset that he could rely on to generate future income. Kathy had no degree. She was able to get a job as a secretary, but earning substantially less than what she was accustomed to and what her standard of living was. To address the Supreme Court case cited by Mr. Eberspacher, he rightly does state that that case differs from this case because it was based upon a settlement agreement. Other cases that were decided and cited by Mr. Eberspacher on a settlement agreement were the Golden case and the Smith case. Here we have an order. Having a general review of this order makes it all seem to be a temporary order because it can be reviewed at a later date with no showing of substantial change in the circumstances. In fact, Judge Weber almost anticipated a substantial change in the circumstances in the future. Instead of waiting until there was a petition filed by Dr. Carr, he went ahead and built in that automatic substantial change in the circumstances at the future date, age 70, for Dr. Carr to retire. The proper procedure for that should have been the judge should have made his order. It should have been a final, appealable order, and the proper procedure would be for either Kathy or Gary to file a petition for modification or termination based upon a substantial change in the circumstances. Kathy may have some assets. However, those assets that she has could be quickly depleted, and they're not the income-generating assets that a medical degree would be that Dr. Carr possesses. Again, the trial court could have picked something other than the arbitrary age of 70 for this maintenance to terminate. It could have been based upon retirement, as in the Pulse case. The Pulse case tied it to retirement, not to a certain age, and the court could have left it to the parties to decide when a substantial change in the circumstances occurred, not when the judge anticipated that to occur. I believe that the Golden case does state that the maintenance, even under the realm of a general review, the maintenance payments could be kept the same, could be increased, decreased, terminated, or could change the terms of the payment, and that's cited on page 471 of that Golden case. So I believe that even though this was a general review, if that's what we call it, then there still could be several options left to the trial court to extend the maintenance for the benefit of Kathy. Again, we are asking that the appellate court reverse the decision of the trial court and that the maintenance be extended until such time as Gary can file a petition alleging and proving a substantial change in the circumstances. Thank you. Thank you, Mr. Hudson. Mr. Foster, thank you, gentlemen. This court stands in recess. All rise.